UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA RENEE BESSON,<br><br>            Plaintiff,<br><br>     v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>            Defendant. | Case No.  1:22-cv-00365-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND**<br><br>(Docs. 15, 17) |

**INTRODUCTION**

Plaintiff Brenda Renee Besson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment or remand and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[1]

---

[1] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 10, 18, 19.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment or remand, deny Plaintiff's appeal, and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on December 27, 2019. AR 213-16, 217-25.[2] Plaintiff alleged that she became disabled on October 14, 2019, due to congestive heart failure. AR 12, 125, 213, 217, 264. Plaintiff's applications were denied initially and on reconsideration. AR 112-16, 125-30. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Laureen Penn issued an order denying benefits on April 23, 2021. AR 7-20, 25-53. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Hearing Testimony

ALJ Penn held a telephonic hearing on April 6, 2021. Plaintiff appeared with her attorney, Nicholas Martinez. Valerie Allen, an impartial vocational expert, also appeared and testified. AR 27-29.

Plaintiff testified that her congestive heart failure causes symptoms that include shortness of breath and chest pain, which come and go, worsening when she is standing and walking. She can walk 40 feet before she has to stop. She takes seven medications for her congestive heart failure and hypertension. The medications cause side effects, such as diarrhea, constipation, memory and concentration issues, blurry vision, and nausea. AR 31-32, 39. Plaintiff also has major panic attacks, which have increased within the last seven months. She also has problems with memory and concentration AR 32-34.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

Plaintiff's daughter helps with chores, like taking out the trash, cooking, dishes, and picking up Plaintiff's medication. Plaintiff lives on the second floor and has problems going up and down stairs because of shortness of breath. Prior to COVID, Plaintiff's daughter would drive her to the store. AR 34-37.

Plaintiff further testified that her gout symptoms flare up with stress. These flare ups affect her feet. AR 37-38. She has had to use an assistive device since October 2019. She has a boot designed for her foot and has worn it since the initial flare. AR 38. She also uses compression stockings. AR 38-39.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as a composite of accounting clerk and collection clerk. AR 45-46. The ALJ also asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a person with Plaintiff's same age, education, and past work experience. This person could lift and carry ten pounds occasionally, ten pounds frequently, could stand and walk for two hours and could sit for six hours. This person could occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl, but could not climb ladders, ropes, or scaffolds. This person also could not have concentrated exposure to vibration, extreme heat, extreme cold, humidity, and pulmonary irritants, such as fumes, odors, dust, gases, and poorly ventilated environments. The VE testified that this person would be able to do Plaintiff's past work. AR 46. There would be transferrable skills, such as "record keeping to include keeping financial records, accounting skills, in order to calculate and compute class, resolve discrepancies, computer skills … basic computer skills, as well as specialized skills … to accounting software." AR 46-47. The VE testified that there would be light or sedentary jobs similar to Plaintiff's past relevant work that would require very little, if any vocational adjustment, such as courtesy booth cashier and invoice control clerk. However, the light job would be precluded based on the hypothetical. AR 47-49. Additional jobs that would fit the hypothetical based on the transferred skills would include billing typist. The hypothetical would only allow for sedentary work. AR 50.

For the second hypothetical, if the ALJ added that the person was limited to work that involved understanding, remembering, and carrying out simple instructions. This person also could

occasionally interact with supervisors, co-workers, but could not interact with the public, could adapt to occasional workplace changes, could not perform fast-paced assembly line work, and could sustain concentration and persistence for periods of two hours at a time.  The VE testified that this person would not be able to do Plaintiff's past work because of the additional non-exertional limitations.  The limitations also would preclude the invoice control clerk and the billing typist jobs.  AR 50-51.

If the person would miss one day a month on a regular basis, they could do the past work or other jobs.  If the person would miss two days month on a regular basis, they could not perform the past work or other jobs in the national economy.  The VE further testified that a person could be off task no more than 10% of a workday.  AR 51.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 10-20.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 14, 2019, her alleged onset date.  AR 12.  The ALJ identified the following severe impairments:  congestive heart failure with cardiomegaly; gout; and diabetes mellitus.  AR 12-14.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 14-15.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except that she could lift and carry 10 pounds occasionally, 10 pounds frequently, could stand and walk for 2 hours, could sit for 6 hours, and could occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl.  She could not climb ladders, ropes, or scaffolds, and could not have concentrated exposure to vibrations, extreme heat, extreme cold, humidity, and pulmonary irritants, such as fumes, odors, dusts, gases, and poorly ventilated environments.  AR 15-18.  With this RFC, the ALJ found that Plaintiff was capable of performing past relevant work in a composite job of accounting clerk and collections clerk.  AR 18-20.

The ALJ therefore concluded that Plaintiff had not been under a disability from October 14, 2019, through the date of the decision.  AR 20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

5

# DISCUSSION[3]

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to consider the established impairments of depression and anxiety to be severe. Plaintiff also contends that the ALJ failed to consider the combined effects of anxiety and cardiomyopathy, resulting in an incomplete RFC. (Doc. 15 at pp. 11-16.) Additionally, Plaintiff argues that the ALJ failed to offer clear and convincing reasons for rejecting her subjective complaints. (*Id.* at p.16.)

### A. Step Two – Mental Impairments

At step two of the five-step sequential evaluation, the ALJ determined that Plaintiff suffered from the severe impairments of congestive heart failure with cardiomegaly, gout, and diabetes mellitus. AR 12. Plaintiff contends that the ALJ failed to find her established impairments of depression and anxiety to be severe, which resulted in an incomplete RFC assessment.

An impairment, or combination of impairments, can be found non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85–28, 1985 WL 56856 (Jan. 1, 1985); *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85–28). "The mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993). A claimant bears the burden of proving that an impairment is disabling. *Id.* (citation omitted).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill,* 869 F.3d 1040, 1048 (9th Cir. 2017), citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). "It is not meant to identify the impairments that should be taken into account when determining the RFC . . . . The RFC . . . *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original). Any error in failing to include an impairment at step two is harmless if the ALJ considered any limitations imposed by the impairment in the RFC determination at step four. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

Here, in finding that Plaintiff's mental impairments were not severe, the ALJ noted that Plaintiff's treatment records documented depression and generalized anxiety disorder, but found that these impairments, "considered singly and in combination, do not cause more than minimal limitation in [her] ability to perform basic mental work activities and are therefore nonsevere." AR 13. In support of this conclusion, the ALJ was not persuaded Plaintiff's mental health impairments even lasted 12 months or would be expected to last 12 months because the mental health records covered only the period from June to October 2020. AR 13. Further, the ALJ noted that the mental health evidence demonstrated that psychiatric medications quickly resulted in improvement of Plaintiff's psychiatric symptoms and did not corroborate her claims of panic attacks. AR 13. The ALJ also found persuasive the state agency medical assessments that Plaintiff only had mild mental limitations. AR 13, citing AR 62, 76, 91, 104. Additionally, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments, known as the paragraph B criteria, and identified findings reflecting at most mild limitations. AR 13-14. Plaintiff's records did not document any significant memory or cognitive deficits or corroborate claims of social difficulty or panic attacks. Her mental status examinations showed a cooperative attitude with intact thought processes and eye contact, good attention, intact thought processes, no signs of major concentrative deficits, no evidence of suicidal ideation, psychosis, or other indicators of decompensation. AR 13-14.

In challenging the ALJ's finding that her mental impairments were not severe, Plaintiff first contends that the ALJ relied on "old opinions, issued by doctors who saw none of the psychiatric records" and that Plaintiff did not begin her mental health treatment until after those doctors issued their opinions. (Doc. 15 at pp. 11-12, 14.) This appears to be an argument that the State Agency medical consultants, Drs. R. Garland and Phaedra Caruso-Radin, did not review all of the evidence concerning Plaintiff's mental impairments because their opinions were rendered after Plaintiff began her mental health treatment. Plaintiff's argument is not persuasive or factually accurate. As indicated by the ALJ, the evidence of mental health treatment spanned only the four-month period from June to

October 2020.  AR 13.  Dr. Caruso-Radin issued her opinion on September 3, 2020, after Plaintiff began her mental health treatment in June 2020.  AR 91, 94.  There is only one visit in September 2020 cited by Plaintiff that occurred after Dr. Caruso-Radin issued her assessment.  (*See* Doc. 15 at p. 14, citing AR 554 [09/04/2020], 556 [08/06/2020], 558, 559 [07/31/2020], 561 [07/24/2020], 563 [07/23/2020]).  Importantly, Plaintiff also fails to explain how any of these records support more than mild mental limitations.  The mere existence of an impairment, or even multiple impairments, is not sufficient to warrant a finding of severity at step two. *Matthews*, 10 F.3d at 680; *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing *Bowen*, 482 U.S. at 153).

Plaintiff next argues that the ALJ "played doctor when she interpreted medical data and made a mental RFC based on her own lay opinion." (Doc. 15 at p. 12.)  However, Plaintiff failed to submit medical opinions from a treating or examining physician specific to her functional limitations resulting from mental impairments.  The burden is on the claimant to establish disability. *Terry*, 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A).  Because it is the Plaintiff's burden to present evidence of disability, the mere absence of an opinion from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a) ("[Y]ou have to prove to us that you are … disabled ...."); 416.912(a) (same); *Harrison v. Saul*, No. 1:19-CV-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021).

Plaintiff next suggests that the ALJ had a duty to further develop the record as a result of the existence of medical records post-dating the opinions of the state agency consultants.  (Doc. 15 at p. 13.)  However, the mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. *See*, *e.g.*, *Charney v. Colvin*, No. CV 1-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir.

2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC).  Moreover, "there is always some time lapse between a consultant's report and the ALJ's hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). The ALJ is entitled to rely on the state agency consultant's opinions even if subsequent evidence enters the record. *See*, *e.g.*, *Keyes v. Comm'r of Soc. Sec.*, No. 1:21-cv-01779-EPG, 2023 WL 2166917, at *2 (E.D. Cal. Feb. 22, 2023). Further, the mental health records post-dating the state agency physicians' assessments do not significantly contradict the opinion that Plaintiff's mental impairments were non-severe.  The treatment records relied upon by Plaintiff establish that Plaintiff's anxiety was stable on her current medications and those records did not identify any clinical findings demonstrating more than mild limitations in the four broad functional areas.  AR 554 ("stable on current medications"), 556 ("anxiety improved on Valium"), 558, 559 (attitude cooperative, attention good, eye contact good, thought process intact and goal-directed), 561 (same), 563 ("anxiety has improved and so has the back pain").

As a final matter, Plaintiff contends that the ALJ failed to consider the combined effects of Plaintiff's anxiety and cardiomyopathy.  Although Plaintiff relies on a one-time statement to Dr. Kusai Aziz that her symptoms of shortness of breath and chest pains were associated with "feeling of anxiety," (Doc. 15 at p. 14; AR 584 [complaining of "worsening shortness of breath and sharp chest pain that can happen with activity and rest and the feeling of anxiety"]), her primary challenge is to the ALJ's evaluation of Dr. Aziz's opinion that Plaintiff, who suffered from cardiomyopathy, was incapable of even "low stress" work.  (Doc. 15 at p. 15.)

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions.  20 C.F.R. §§ 404.1520c and 416.920c.  Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a) and 416.920c(a).  The Commissioner evaluates the persuasiveness of the medical

opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2) and 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. §§ 404.1520c(c)(1) and 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. §§ 404.1520c(c)(2) and 416.920c(c)(2); *Woods*, 32 F.4th at 792. The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id*. (internal citations omitted).

In this case, Dr. Aziz completed a Physical Medical Source Statement on January 27, 2021, and opined that Plaintiff could sit for one hour at a time, stand for 5 minutes at a time, sit for less than 2 hours in 8-hour working day, and stand/walk for less than 2 hours in an 8-hour working day. AR 545. Dr. Aziz also opined that Plaintiff was incapable of even "low stress" work and explained that "stress may induce shortness of breath and or chest pain." AR 546. Additionally, Dr. Aziz indicated that Plaintiff should avoid extreme temperatures, dust, fumes, gases, and hazards. Plaintiff was "to be permanently disabled from cardiac point of view in light of severe cardiomyopathy." AR 547.

The ALJ considered Dr. Aziz's medical source statement, and reasoned as follows:

> The undersigned finds this opinion persuasive insofar as the sedentary type restrictions and environmental restrictions are consistent with Dr. Aziz's records and the claimant's treatment history as discussed with reference to the State Agency Assessments. However, the other extreme limitations such as low-stress work and work adding up to less than eight hours is unsupported by the record as a whole showing cardiac improvement, diabetic control, and gout without major flares even despite some non-compliance, and is

        contradicted by Dr. Aziz's own records showing the claimant improved over time. Those portions were unpersuasive.[4]

AR 18.

        Plaintiff does not assert that the ALJ failed to consider the factors of consistency and supportability in evaluating Dr. Aziz's opinion. Instead, Plaintiff suggests that the ALJ improperly concluded that Dr. Aziz's opinion regarding low stress work was extreme and unpersuasive. (Doc. 15 at p. 15.) The ALJ found this limitation extreme and unpersuasive because it was not supported by the record showing cardiac improvement and also was contradicted by Dr. Aziz's records showing improvement over time. AR 18. Plaintiff disagrees with this finding, noting that Dr. Aziz characterized Plaintiff as "partially improved." (Doc. 15 at p. 15, citing AR 450.) However, the record cited by Plaintiff relates to partial improvement of her at 37%, but subsequent medical records showed increased improvement to 63%. AR 450, 581. Plaintiff also does not substantively address the record evidence (referenced in the preceding paragraph of the decision and apparently relied upon by the ALJ), such as cardiology records from Dr. Aziz showing improvement in shortness of breath and chest pain and corresponding improvement in laboratory and diagnostic testing with an ejection fraction rising from 19 percent to somewhere between 45-63 percent. AR 18, 358 (EF of less than 19%), 392-93 (35%), 436 (no shortness of breath), 447-48 (37%), 450 ("ejection fraction partially improved 37%"); 581 ("Cardiomyopathy: Likely nonischemic in light of nuclear stress test that did not show infarction or ischemia. Ejection fraction improved to 63% on echocardiogram"; "Shortness of breath: Possibly pulmonary etiology in light of normal RMP"), 583 (45%). The Court concludes based on this record that the ALJ's evaluation of Dr. Aziz's opinion is supported by substantial evidence.

        Based on the foregoing, the Court finds that the ALJ did not err at step two of the sequential evaluation relative to Plaintiff's depression and generalized anxiety disorder. Moreover, even if the Court found error, any such error would be harmless. The ALJ reportedly considered all of Plaintiff's impairments, including the not severe impairments, when assessing Plaintiff's residual functional

---

[4] The ALJ also rejected Dr. Aziz's statement that Plaintiff was permanently disabled because such a statement was not an opinion under the current rules, was a matter reserved to the Commissioner, and was conclusory in nature. AR 18.

capacity. AR 14. *See Cory T. T. v. Kijakazi*, No. 8:21-CV-01228-JC, 2022 WL 4109454, at *10 (C.D. Cal. Sept. 8, 2022) (finding any error from failing to find plaintiff's mental impairments severe at step two harmless where ALJ "reportedly considered all of plaintiff's symptoms in determining plaintiff's residual functional capacity"); *Miner v. Berryhill*, 722 F. App'x 632, 633 (9th Cir. 2018) ("The ALJ's failure to list fibromyalgia as a severe impairment at step two is at most harmless error" because "the ALJ found that other of [claimant's] ailments constituted serious impairments, and consequently, in accordance with the governing regulations, moved on to the subsequent evaluation steps").

### B. Plaintiff's Subjective Complaints

Plaintiff next argues that "the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations, and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints." (Doc. 15 at p. 16.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 16. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that Plaintiff's allegations were not entirely consistent with the medical evidence. AR 16. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). For example, the ALJ noted that Plaintiff's "diabetes mellitus was

not out of control, with a hemoglobin A1c score of 6.8 percent." AR 17, citing AR 458-59. With regard to her chest pain and shortness of breath, the ALJ noted that by February 2020, records documented "only 'rare' episodes of mild, fleeting chest pain and no further shortness of breath." AR 17, citing AR 438. The ALJ also noted that with respect to her cardiac recovery, Plaintiff's ejection fraction rose from 19 percent to between 45-63 percent. AR 17-18, citing AR 581, 583.

Second, the ALJ cited the effectiveness of Plaintiff's treatment for her cardiac issues and her diabetes. AR 16-17. The effectiveness of medication or treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits."). As examples, the ALJ noted that an eye examination ruled out any diabetic complication with her diabetes on metformin and the record reflected that her diabetes was not out of control. AR 17-18, citing AR 458-59, 549-50 ("Type 2 diabetes mellitus without complications"). With respect to her cardiac condition, the ALJ identified that her ejection fraction had improved to 63 percent by December 2020. AR 17, citing AR 581.

Third, and finally, the ALJ considered evidence that Plaintiff was not compliant with treatment recommendations. AR 17. An ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). For instance, the ALJ considered record evidence that Plaintiff "complained of gout symptoms but she admitted she was not taking either medication she was prescribed for gout. AR 17, citing AR 413. The ALJ also noted the fact that Plaintiff was counseled on smoking cessation in December 2018, but by June 2020, she had "relapsed into smoking." AR 17, citing AR 413-15, 457-58.

Plaintiff argues that the ALJ erred by failing to address all of Plaintiff's alleged symptoms, including fatigue, shortness of breath, anxiety, and depression. (Doc. 15 at pp. 18-19.) The Court disagrees and does not find reversible error. As a preliminary matter, the ALJ included functional limitations in Plaintiff's RFC to account for the limiting effects of her symptoms. Specifically, the

13

ALJ limited Plaintiff to the performance of sedentary work, except that she could lift and carry 10 pounds occasionally, 10 pounds frequently, could stand and walk for 2 hours, could sit for 6 hours, and could occasionally climb stairs and ramps, balance, stoop, crouch, kneel, and crawl. She could not climb ladders, ropes, or scaffolds, and could not have concentrated exposure to vibrations, extreme heat, extreme cold, humidity, and pulmonary irritants, such as fumes, odors, dusts, gases, and poorly ventilated environments. AR 15-18.

As to specific complaints, the ALJ expressly considered Plaintiff's reports of fatigue in July through October 2020, but noted that her medication side effects appeared mostly related to acute medication for temporary back pain. AR 17, citing AR 563-69. The ALJ also expressly considered Plaintiff's complaints of shortness of breath, but noted objective evidence demonstrating that by February 2020 her symptoms of shortness of breath and chest pain had improved. AR 17, 436. Although Plaintiff subsequently reported shortness of breath in June 2020, the ALJ pointed out that Plaintiff also had relapsed into smoking. AR 17, 457.

The ALJ additionally addressed Plaintiff's depression and anxiety in the decision, finding them not severe and resulting in only mild functional limitations.[5] AR 13-14. Critically, the ALJ found that "[a]ppropriate psychiatric medications quickly resulted in improvement of both her psychiatric symptoms and her somatic complaints." AR 13. As noted above, impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for SSI benefits. *Warre*, 439 F.3d at 1006; *see also Wellington*, 878 F.3d at 876.

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. Even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error

---

[5] Plaintiff also suggests that the ALJ failed to consider her difficulties with concentration and memory. (Doc. 15 at p. 20.) However, the ALJ indicated that Plaintiff's mental status examinations did not document any significant memory or cognitive deficits or any major concentrative deficits. AR 14, citing AR 552-573.

where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

## **CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's motion for summary judgment and her appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Brenda R. Besson.

IT IS SO ORDERED.

Dated:    **June 29, 2023**                         /s/ *Barbara A. McAuliffe*            _
UNITED STATES MAGISTRATE JUDGE